CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2019 FEB 20  PM 2: 59

DEPUTY CLERK_____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| SARAH BUCKLEW, Individually, §<br>AND §<br>CHRISTOPER ING, Individually §<br>Plaintiffs, §<br> §<br> §<br>v. §<br> §<br> §<br>CRAIG BONHAM , ERICA ZAMORA, §<br>SHILLONDA PERKINS, §<br>NICOLE ROGERS, LORETTA BOLDEN, §<br>OFFICER MATT ST CLAIR, §<br>CITY OF GARLAND, §<br>AND TEXAS DEPARTMENT OF FAMILY §<br>PROTECTIVE SERVICES, et al, §<br>Defendants. §<br> § | **319-CV0435-S**<br>Civil Action No _____ |

## PLAINTIFF'S ORIGINAL COMPLANT FOR INJUNCTIVE RELIEF AND MONETARY DAMAGES

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Sarah Bucklew and Chris Ing, complaining of Defendants, Craig Bonhan, Assistant District Attorney from Dallas County, Erica Zamora, Shillonda Perkins, Nicole Rogers, Loretta Bolden, Officer Matt St Clair from the Garland Police Department and Texas Department of Family Services (referred to herein as "CPS") hereby files *Plaintiff's Original Complaint for Injunctive Relief and Monetary Damages* and respectfully shows the following:

## I. NATURE OF THE ACTION

1.     This is a civil rights action seeing injunctive relief and damages arising under the Fourth Amendment to the U.S. Constitution and laws of the United States and the State of Texas.

2.      CPS has been used in three recent reports of abuse and neglect that were either fabricated allegations of abuse and/or neglect, contained no allegations of abuse or neglect but were reported by a police officer acting in official capacity, or were unfounded allegations, in order to harass the Plaintiff's family regarding three separate reports alleging abuse and/or neglect of the children, received by CPS on 6/13/2017, 4/16/2018, and 12/1/2018.

3.      On April 16, 2018, CPS opened an investigation of abuse or neglect of only some the children based no legitimate report/allegation of abuse or neglect ever being received by CPS, and included only three out of five children, which is a violation of CPS policies and procedures. This April 2018, CPS case was assigned to caseworker, Erica Zamora.

4.      On April 18, 2018, Erica Zamora, the CPS caseworker made the first and only attempt to come to the Plaintiff's residence to interview the mother and the (at the time) 4 year old. Ms. Bucklew and the child were not home at the time, so Ms. Zamora left a CPS letter on the door notifying them that a report of abuse and/or neglect CPS investigation had been opened into the circumstances of the children. When Ms. Bucklew arrived home she immediately called Erica Zamora's phone number provided on the letter left on her front door. Ms. Bucklew left a voicemail for Erica Zamora on her voicemail at the phone number provided on the letter and asked Ms. Zamora to have her supervisor return her call at her earliest convenience.

5.      Immediately after leaving this voicemail for Ms. Zamora, two Sachse Police officers, Sergeant Doerr and another Sachse Police officer, his name unknown, (Ms. Bucklew is currently unable to request information about this officer's identity) arrived at the Plaintiff's residence to conduct a welfare check on the 4 year old child. They did conduct the welfare check and the welfare of the 4 year old was confirmed, at which time the Sachse police departed.

6.      On May 10, 2018, the Family Court with jurisdiction over the family case was petitioned for an Ex Parte Order to Aid in an Investigation, by an Assistant District Attorney, Craig

Bonham for Dallas County, the attorney for the Petitioner the Texas Department of Family Services. Mr. Bonham petitioned the court with a Petition for an Order to Investigate Child Abuse or Neglect. Mr. Bonham's signed this a Petition for an Order to Investigate Child Abuse or Neglect, itself does not meet the requirements legally required to present the Petition to the Family Court Judge, nor did the CPS caseworker complete the required affidavit, as required by the as required by 5112 of the CPS handbook (as of March 2018), Proof Required to Obtain a Court Order in Aid of Investigation. The Petition submitted to the Associate Family Judge by the Assistant District Attorney, Craig Bonham of Dallas County contained no probable cause, as required, contained fabricated and incorrect facts about the parents of the child, it contained no valid allegation of abuse and/or neglect and did not contain the signed affidavit by the CPS caseworker completed by Erica Zamora, as legally required. *(Petition to Investigate Child Abuse or Neglect signed and filed with the District Clerk on May 10, 2018, by Assistant District Attorney, Craig Bonham and subsequent Ex Parte Order signed by the Associate Family Court Judge on May 18, 2018, is attached hereto as "**Exhibit A**".)*

7.     In June 2018, Erica Zamora came to the Plaintiff's house, again, for a monthly follow-up visit, and brought the Sachse Police. At this time, Ms. Zamora told Mr. Ing, the Plaintiff that she cannot close out the CPS case, until she receives Ms. Bucklew's protected health medical records from the illegal, out-of-jurisdiction, without-a-warrant, without a legal cause, involuntary commitment of Ms. Bucklew from her house in Sachse, by Officer Matt St Clair, from the Garland Police Department on May 1, 2018 to Richardson Methodist Hospital. Ms. Zamora was specifically citing the medical records from her illegal, involuntary commitment to Richardson Methodist Hospital on May 1, 2018. *(APAL, Notification of Emergency Detention completed by Officer Matt St Clair from Garland Police Department on May 1, 2018, while at Richardson Methodist Hospital, is attached hereto as "**Exhibit B**".)*

## II. PARTIES

8.      Ms. Bucklew and Mr. Ing are both citizens and adult residents of Dallas County, Texas, USA.

9.      Defendant Craig Bonham is an individual citizen and believed to be a resident and at all relevant times was employed as an Assistant District Attorney for Dallas County. He is sued in his individual capacity and can be served with Summons at his work address at Henry Wade Juvenile Justice Center at 2600 Lone Star Drive, Dallas, TX 75212.

10.     Defendant Erica Zamora is an individual citizen and believed to be a resident and at all relevant times was employed as a caseworker for the Texas Department of Family and Protective Services, Dallas County Unit. She is sued in her individual capacity and may be served with Summons at her work address at 8700 N. Stemmons Freeway, Dallas, TX 75247.

11.     Defendant Shillonda Perkins is an individual citizen and believed to be a resident and at all relevant times was employed as a supervisor for the Texas Department of Family and Protective Services, Dallas County Unit. She is sued in her individual capacity and may be served with Summons at her work address at 8700 N. Stemmons Freeway, Dallas, TX 75247.

12.     Defendant Nicole Rogers is an individual citizen and believed to be a resident and at all relevant times was employed as a supervisor for the Texas Department of Family and Protective Services, Dallas County Unit. She is sued in her individual capacity and may be served with Summons at her work address at 8700 N. Stemmons Freeway, Dallas, TX 75247.

13.     Defendant Loretta Bolden is an individual citizen and believed to be a resident and at all relevant times was employed as a Program Director for the Texas Department of Family and Protective Services, Dallas County Unit. She is sued in her individual capacity and may be served with Summons at her work address at 8700 N. Stemmons Freeway, Dallas, TX 75247.

14.     Defendant Officer Matt St Clair is an individual citizen and believed to be a resident and at all relevant times was employed by the City of Garland as a police officer. He is sued in his individual capacity and may be served with Summons at his work address at the Garland Police Department, 1891 Forest Lane, Garland, TX 75042.

15.     Defendant City of Garland, Texas is created as a municipal corporation by charter of 1951 and it may be served with process by personal delivery on the City of Garland Secretary Rene Dowl, at City of Garland Municipal Building, 200 N. Fifth Street, Garland, Texas 75046-9002.

16.     Defendant Texas Department of Family and Protective Services (TDFS) is a State Agency, and may be served with process by personal delivery at the address of 1050 N Westmoreland Road, Suite 200, Dallas, TX 75211.

### III. JURISDICTION

16.     This action to vindicate Plaintiff's rights protected by the Fourth Amendment to the U.S. Constitution is brought under 42 USC 1983. This Court has jurisdiction to hear the Merits of Plaintiff's claims under 28 USC 1331 and 1343.

### IV. VENUE

16.     Venue is proper under 28 U.S.C 1391 because one or more Defendants reside in the Northern District of Texas.

17.     Venue is also proper under 28 U.S.C 1391 because all of the events or omission giving rise to the claims occurred in the Northern District of Texas.

### V. FACTS

18.     Ms. Bucklew and Mr. Ing have a blended family, and share their youngest child together, who is currently five years old, who lives with the Plaintiff's full-time. Both, Individual Plaintiff's, Ms. Bucklew and Mr. Ing, have two other, minor children each, from previous marriages.

19.     Ms. Bucklew has two older children from a previous marriage, ages ten (male) and thirteen (female) and are enrolled in Wylie ISD. Ms. Bucklew shares joint custody with her ex-husband, which is in the best interest of the children.

20.     Mr. Ing has two older children from a previous marriage, ages eight (female) and nine (female) are enrolled in Frisco ISD. Mr. Ing shares joint custody with his ex-wife, which is in the best interest of the children.

21.     On all relevant dates to this civil action, June 13, 2017, April 16, 2018, and December 1, 2018, Ms. Bucklew and Mr. Ing lived in Sachse, Dallas County, Texas, and they have resided at the same residence since 2013.

21.     The first set of CPS cases relating to this civil action was opened on June 13, 2017, when a false report of sexual abuse was reported to CPS, assigned to caseworker, Kourtsean Johnson and was assigned at that time, case # 45326829. Case was closed in November 2017, allegations were documented and case closed correctly as "unfounded". Two separate letters of CPS Notice of Finding was mailed separately on or around November 11, 2017, to both Plaintiff's, respective of each set of children and allegations.

22.     Second set of CPS cases was opened on April 16, 2018. At least one of the reporters of the allegations of abuse or neglect was Officer Matt St Clair from Garland Police Dept, and the allegation was *"a concern for mental health"*. This April 2018, CPS case was assigned to the CPS Caseworker, Erica Zamora, ("Individual Defendant"). Ms. Zamora came to Ms. Bucklew

and Mr. Ing's house on April 18, 2018, between 3:00-4:00 p.m. No one was home at the time, so Ms. Zamora left a CPS paper on the front door of their residence, informing the Plaintiff's there had been an allegation of abuse or neglect that had opened a CPS case for an investigation into the circumstances of the children.

23.    Ms. Bucklew arrived home later on April 18, 2018, found the CPS letter on the door left by caseworker, Erica Zamora and immediately called Ms. Zamora. Ms. Bucklew left a voicemail for Erica Zamora requesting that she have her supervisor, Shillonda Perkins give Ms. Bucklew a phone call at her earliest convenience. Ms. Bucklew left her home phone number, which was her only phone number at the time, for Ms. Perkins to call her back on. Neither Erica Zamora nor her supervisor, Shillonda Perkins, ever made any attempt to return Ms. Bucklew's phone call, as requested on the voicemail she left for Erica Zamora. Ms. Zamora made no other attempt to come back to the residence to interview at the time, the 4 year old.

24.    Third CPS case was opened on or around November 29, 2018, was an allegation of medical neglect and was assigned to CPS caseworker, Megan Hassinger. Upon Ms. Hassigner's first visit to the residence on Saturday, December 1, 2018, she was greeted by all five children, who happened to be outside in the front yard playing family football. Ms. Hassinger was immediately shown the prescription medication, ear drops for the 5 year old, that was the prescription in question and the reason hospital administration staff made the call to CPS to make a report of possible medical neglect. Ms. Hassinger interviewed both of the Plaintiff's and all five children on this day.

25.    On Saturday, December 1, 2018, after taking the pictures of the medical records, the prescription medication from the emergency room visit on November 29, 2018, and conducting all seven interviews, Ms. Hassinger went to her vehicle to call her supervisor. Ms. Hasssinger then came back and informed both of the Plaintiff's that she cannot close out the case, even

though, at this time, the original allegations were unfounded, because she had seen the

medication prescribed to *the Plaintiffs 4 year old by Emergency Room Physician.*

25.     It was at the end of January of 2019, that Mr. Ing's children, ages eight and nine informed

him that CPS had pulled them out of school to conduct another interview of the children by both

Megan Hassinger and also, Nicole Rogers, Ms. Hassinger's supervisor.

## VI. ACTIONS AGAINST INDIVIDUAL DEFENDANTS
## UNDER 42 U.S.C. 1983
## FOR VIOLATIONS OF THE FORTH AMENDMENT

26.     Individual Defendants, acting under color of law, illegally deprived Ms. Bucklew and Mr.

Ing of certain constitutionally and statutorily protected rights for which acts, Ms. Bucklew and

Mr. Ing sues as follows:

    i.    Individual Defendants did not receive a legally valid report of abuse or neglect to

        open a CPS investigation according to Chapter 261 of the Texas Family Code, §

        261.001, *on April 16, 2018.*

    ii.    Individual Defendant, Erica Zamora, the CPS caseworker assigned to the case in

        April 2018, received a phone call from Ms. Bucklew on April 18, 2018, in the

        evening, wherein Ms. Bucklew left a voicemail for the CPS caseworker stating she

        received notice from the caseworker that day on her front door, since she was not

        home.

    iii.    Individual Defendants, Erica Zamora and her supervisor, conspired to not return

        Ms. Bucklew's phone call as she requested on Erica Zamora's voicemail on

        4/18/2018. Instead, Erica Zamora sent a text to Ms. Bucklew on a cell phone she

        did not have, instead of calling her back on the phone number left on Erica

        Zamora's voicemail on 4/18/18.

iv.     Erica Zamora at approximately 9:00pm made a phone call to the Sachse Police

Dept requesting Sachse Police do an immediate welfare check on Christian Ing,

the 4 year old who lives at the house with the Plaintiff's, who are his biological

parents. The Sachse Police came to the Plaintiff's house at 9:00pm and saw the 4

year old, as welfare check was unnecessary. Erica Zamora never returned the

phone call to Ms. Bucklew or had her supervisor call Ms. Bucklew as requested

on the voicemail and instead maliciously called the Sachse Police to do an

unnecessary welfare check on the child. They also texted Ms. Bucklew on a phone

number she did not have access to, nor was the phone number she provided on the

voicemail left on Ms. Zamora's voicemail for her supervisor, Ms. Perkins to call

her back on.

v.      Ms. Bucklew was later informed by both CPS caseworker, Ms. Zamora and her

supervisor, Ms. Perkins that Officer Matt St Clair had provided a cell phone

number for Ms. Bucklew which did not exist. Therefore, when Ms. Zamora

received Ms. Bucklew's voicemail in the evening of April 18, 2018, Erica Zamora

and her supervisor stated to Ms. Bucklew that Ms. Zamora had texted Ms.

Bucklew Ms. Perkins information, which of course, Ms. Bucklew never received.

The only phone Ms. Bucklew had at the time in April 2018, was her home phone

number which was the phone number she left on Erica Zamora's voicemail for her

supervisor to call her back on and her home phone does not receive text messages.

vi.     The only time Erica Zamora made any attempt to come to the residence or see the

4 year old, ever at any point in time, was the first and only time she came to the

residence, on April 18, 2018. Neither ("Individual Defendants") Erica Zamora or

her supervisor, Shillonda Perkins returned Ms. Bucklew's voicemail from April

18, 2018, at any point in time, ever, yet proceeded to obtain an Ex Parte Order to

Investigate without probable cause as outlined in 5112 of the CPS handbook (as of March 2018).

vii.   No attempt was made by the Individual Defendants to contact Ms. Bucklew or to come to her residence between 4/18/18 – 5/18/18, when the Ex Parte order was signed by the family court Associate Judge on May 18, 2018.

viii.   Individual Defendants, Erica Zamora and her supervisor petitioned the family court with a Petition to Investigate Child Abuse or Neglect filed with the District Clerk by Craig Bonham, District Attorney for Department of Family and Protective Services, on May 10, 2018. This Petition/Motion to Aid in an Investigation did not meet the legal requirements to submit to the Judge or hold an ex-parte hearing. Ex Parte hearing held on May 18, 2018.

ix.   The affidavit completed by the caseworker required to petition the Family Court for an Ex Parte Order, according to 5110 of the CPS handbook (as of March 2018), was not included with the Motion/Petition to the Family Court, nor was there probable cause listed on the Petition to Investigate Child Abuse or Neglect as required by 5112 of the CPS handbook (as of March 2018), Proof Required to Obtain a Court Order in Aid of Investigation. *(Required Affidavit required to be signed by the CPS caseworker and attached to the Motion filed with the family court, in order to petition the family court for an Ex Parte Order to Aid in Investigation of Child Abuse or Neglect, attached hereto as **"Exhibit C"**.)*

x.   Individual Defendants, Erica Zamora, CPS Caseworker's Supervisor told Ms. Bucklew that they could not close out the CPS case against Ms. Bucklew, until she received Ms. Bucklew's protected medical heath records from an another civil rights violation, a few weeks prior, wherein Officer Matt St Clair ("Individual Defendant") from Garland Police came to take Ms. Bucklew from her house in

Sachse to be involuntarily committed to Richardson Methodist Hospital on May 1, 2018, without cause, reason or warrant, Civil Action No. 3:18-cv-2117, filed in US Northern District Court, Dallas Division, in August 2018. Erica Zamora, the CPS caseworker told Ms. Bucklew she could not close out the CPS case until she received Ms. Bucklew's private, protected, medical records from an illegal arrest committed under color of law by the same person alleged to have made this false report of abuse or neglect to CPS that resulted in a CPS case being opened on April 16, 2018. Upon the advice of several attorneys who advised Ms. Bucklew not to provide CPS with her medical records, Ms. Bucklew declined at this time to provide CPS with any of her medical records.

xi.     Erica Zamora came again to the Plaintiff's house again in June 2018, for a subsequent CPS visit to take pictures of Ms. Bucklew's three children, as the original CPS case alleging a *"concern for mental health"* was never closed out, accompanied with Ms. Zamora in June was several Sachse Police officers.

xii.    Ms. Bucklew questioned both Ms. Zamora and her supervisor, Ms. Perkins why CPS cannot go by the evaluation conducted by the state evaluators Adapt, at her house on April 9, 2018, when Officer Matt St Clair accompanied Adapt personnel, Dougin and Sarah to evaluate Ms. Bucklew's mental state. At the time, Ms. Zamora stated to Ms. Bucklew that Officer Matt St Clair ("Individual Defendant") told CPS, incorrectly and maliciously, that Ms. Bucklew had refused this evaluation conducted at her house, by Adapt personnel on April 9, 2018.

xiii.   Individual Defendants, CPS caseworker, Erica Zamora and her Supervisor, Shillonda Perkins closed out the April 2018 CPS case, sometime after the subsequent visit to their house in June with the Sachse Police, after Ms. Bucklew immediately provided CPS with the medical records from her evaluation by Adapt

personnel at her house on April 9, 2018.  When Erica Zamora and her supervisor closed out this CPS case, they listed the findings of original allegations of abuse or neglect made to CPS on April 16, 2018, as **"unable to determine"**.  However, there was no original allegation of abuse or neglect reported, according to Erica Zamora, sufficient to open the case in the first place. Therefore, for the CPS case to be closed out as **"unable to determine"** *(where there was no original allegation of abuse or neglect made),* was malicious on the part of the ("Individual Defendants"), Erica Zamora, Shillonda Perkins and Officer Matt St Clair.

xiv.    Erica Zamora never sent a Notice of CPS findings to the Plaintiff's for the April 2018, CPS case which alleged a *"concern for mental health"*, when the case was closed out, after receiving Ms. Bucklew's requested medical records. Ms. Bucklew did not provide CPS with the medical records from her involuntary commitment from May 1, 2018 at Richardson Methodist Hospital, as requested by Erica Zamora and Shillonda Perkins, but instead provided CPS with the records from Adapt's evaluation at her house on April 9, 2018. The same evaluation that Officer Matt St Clair maliciously alleged Ms. Bucklew refused to participate in when he brought Adapt , the state evaluators to her house on the evening of April 9, 2018. Ms. Bucklew also has a copy of the police body cam video of this evaluation conducted by the state evaluator, Adapt, in her possession, from the two Garland Police officers body cam video's, Officer Matt St Clair and Officer Wade from Garland Police Dept who were both present during the entire evaluation by the state evaluator Adapt conducted on the front porch of Ms. Bucklew's house. This body cam video was ordered to be provided to Ms. Bucklew by Judge Carrillo Ramirez, United Magistrate Judge at a scheduling

hearing on or about January 3, 2019, in a dual request and agreement for discovery.

xv.    After Megan Hassinger the CPS caseworker assigned to the December 2018 case, took pictures of the emergency room's physicians records, took picture of the bottle of eardrops ($300 prescription medication) and the other prescription medication prescribed by the attending emergency room physician and conducted all interviews with all five children and the two parents, Bucklew and Mr, Ing, on December 1, 2018, Ms. Hassinger went outside to call her supervisor. After coming back inside to tell Ms. Bucklew and Mr. Ing that the case cannot be closed out at this current time until Ms. Bucklew either agrees to submit to a new psychological evaluation for CPS or in the alternative, if possible, provide CPS with a copy of a psychological evaluation. The reason Ms. Hassinger stated to the Plaintiff's was because the last, previous CPS case, Ms. Hassinger was referring to the April 2018 CPS case, alleging a "concern for mental health", was closed out as **"unable to determine".** Because the April 2018 case was maliciously closed out as **"unable to determine"** that would be affecting this new CPS case, preventing it from being closed out even though the new allegations were regarding medical neglect and the Plaintiff's had already proved the allegation of medical neglect was unfounded as soon as they showed her they had the prescription prescribed by the emergency room physician.

xvi.    On December 14, 2018, Ms. Bucklew emailed Ms. Hassinger a Forensic Psychological Evaluation conducted during a social study that was used in Ms. Bucklew's custody arrangement with her ex-husband regarding her two older children. At this time, Ms. Bucklew assumed the CPS would be closed out as this was what Ms. Hassinger requested in order to close out the CPS case.

xvii.   At the end of January 2019, on or about Thursday, January 24, 2019, Mr. Ing's two older children, ages eight and nine, who attend Frisco ISD informed Mr. Ing that Ms. Hassinger had taken them both out of class at their school in Frisco, TX and had interviewed them, and also had her supervisor, Nicole Rogers interview both of them children separately from Ms. Hassinger, who was not present during the interviews conducted after Ms. Hassinger.   This was very alarming because the Plaintiff's had assumed CPS has closed the case out over a month before this.

xviii.   At this time, Ms. Bucklew called CPS to find out who Ms. Hassinger's supervisor was. She was informed Ms. Hassinger's supervisor was Nicole Rogers and her phone number was (972) 785-6405. Ms. Bucklew called this phone number, but the phone number went to someone with a different name, as Ms. Bucklew got this person's voicemail each time she called it. Ms. Bucklew called CPS back to get the correct phone number for Nicole Rogers and was provided the same phone number. She told CPS that this was not the correct phone number for Nicole Rogers. At that time, CPS offered to provide her the program director's phone number, Loretta Bolden's phone number. So Ms. Bucklew called the program director and left a voicemail for her requesting she return her phone call. Loretta Bolden never made any attempt to return Ms. Bucklew's phone call.

xix.   On Thursday, January 31, 2019, Ms. Bucklew's two older children, ages ten and thirteen, who are enrolled at Wylie ISD informed Ms. Bucklew CPS had removed them from their classes to interview them again. Due to the fact Ms. Bucklew could not reach Nicole Rogers or the program director, this caused great concern for both of the Plaintiff's and they decided to file suit against CPS and request an immediate restraining order from CPS.

## VII. ACTION AGAINST TEXAS DEPT OF FAMILY AND PROTECTIVE SERVICES UNDER 42 U.S.C. § 1983

27.    Ms. Bucklew and Mr. Ing adopt by reference the facts and allegations set forth above as though fully set forth herein.

28.    The violations of Ms. Bucklew and Mr. Ing's constitutional rights under the Fourth Amendment to the US Constitution, Ms. Bucklew and Mr. Ing's damages, and/or the conduct of the individual defendants were directly and proximately caused by the actions and inactions of Defendant Texas Department of Family and Protective Services, which has encourages, tolerated, ratified, and has been deliberately indifferent to the following policies, procedures, and practices and customs and to the need for more or different raining, supervision, investigation or discipline in the areas of:

      a.   What is the exact definition of abuse and neglect of a minor child according to Texas Family Code;

      b.   What constitutes a creditable report of abuse or neglect in order to open a CPS investigation, what must the allegations explicitly state or allege to CPS about the safety and/or welfare of the children; Must the allegation contain an allegation of abuse or neglect;

      c.   Is a concern for "mental health" a valid reason to open a CPS investigation into the welfare of some, certain or all of the children, with no other allegations alleging abuse or neglect made to CPS;

      d.   Can CPS open an investigation of child abuse or neglect if there was no allegation of abuse or neglect made by the reporter, even of the reporter is a police officer requesting the caseworker to "do him a favor";

e. What is the basic investigative process of a CPS investigation and what is the motive CPS, a state agency, would be conducting such an investigation into the circumstances of all the children involved;

f. What should be done by the CPS caseworker when a parent calls the CPS investigator, prior to the first contact with the parent? (*For example if the parent calls the CPS investigator, after receiving notice on her front door of CPS investigation for the first time, and leaves a voicemail with the CPS caseworker from her home phone number on the voicemail the same day, requesting a phone call back, can the CPS caseworker text her on a different phone number, other than the phone number the parent just provided to the CPS caseworker on their voicemail? Why would the CPS caseworker respond to that voicemail by using a different phone number other than the one the parent just left for her to call her back on? Was it a favor to the police officer, knowing this is not the parent's phone number?*);

g. What are the legal requirements, or imminent cause for concern, in order for the CPS investigator to call the city police department where the parent and child live, to do a welfare check at 9:00pm, after receiving a voicemail from the parent who was just notified that a CPS investigation had been opened;

h. What are exigent circumstances, exactly;

i. The CPS caseworker is required to keep the reporters identity confidential, and what are, if any, the exceptions to that rule;

j. What to do if a report of abuse or neglect is found to be immediately unfounded as soon as caseworker arrives at the residence to investigate, for

the first time, before interviewing family members and the other children who

not the subject to the report;

k.  What are the legal reason's a CPS investigation can be kept open after the first

initial interviews of all parties involved? Can the CPS case remain open for

months after the initial report was already determined legally unfounded, by

photographing the medication prescribed to the child that caused the original

report? Can the CPS case still be kept open for months and months on request

of a state official or police officer, interviewing the children at school multiple times

and not informing the parents;

l.  How many attempts to a known residence must a caseworker make before that

caseworker can request permission to their supervisor to complete an Affidavit

in Support of Order In Aid of Investigation in support of a Motion to Aid in

Investigation?; Sample Affidavit in Support of Order to Aid in Investigation. Attached theto as Exhibit C

m.  What is the "probable cause" necessary and legally required, that must be

listed on the Affidavit in Support of Order In Aid of Investigation in support

of a Motion to Aid in Investigation signed by the caseworker in order to seek

an Ex Parte Order to Investigate Child Abuse or Neglect as required by 5112

of the CPS handbook (as of March 2018), Proof Required to Obtain a Court

Order in Aid of Investigation;

n.  Can a caseworker use a different affidavit other than the sample affidavit

provided required to be used, or can the caseworker remove entire sections of

the sample affidavit, or can the CPS caseworker not complete an affidavit at

all and still petition the Family Court requesting the court to order an Ex Parte

Order for Investigation of Child Abuse or Neglect?

o.  What are the legal reasons that a CPS case alleging abuse or neglect can be

closed out as **"unable to determine"** and what are the consequences to that

family for years to come if CPS closes out a case as **"unable to determine"**;

p.  It is required to inform the parent within 24 hours of contact with a minor

child, such as the first visit to the children's schools or subsequent visits 2, 3,

4 months later, when the parents are under the impression the CPS case has

closed since they have not heard from or seen CPS in months;

q.  How does the CPS caseworker verify information told to CPS in order to

confirm the veracity of the information, told to CPS by the reporter, (*i.e.*

*phone numbers provided by the reporter for the parent or parents under the*

*CPS investigation*) Should the CPS caseworker investigate whether such

information is or is not correct, such as phone numbers;

r.  Can CPS request or threaten to not close out a CPS case, unless the

caseworker is provided any medical records of the parent, from an illegal

incident involving the police, even when there is no concern of abuse or

neglect for the children;

s.  Can CPS only interview some of the children involved, never listing or

making an attempt to see the other children;

t.  Can CPS participate in illegal, organized crime along with one or several

police officers in order to harass a family with no legally valid report of abuse

or neglect ever being made to CPS;

u.  Is CPS required to send out notice of findings to the parents when an investigation is completed;

v.  How long can CPS keep a case open when the original report was of medical neglect was already proven unfounded and the CPS caseworker and her supervisor has seen no other evidence of abuse or neglect;

w.  How long can CPS keep a case open, for months, without implementing a family plan or course of action, because such action is unnecessary? If such action is unnecessary why is the case still remaining open months later?;

x.  If a parent makes a request that a supervisor call the parent back, can the Supervisor ignore this request and never make any attempt to return the parents call, even when requested?

y.  If a parent requests the CPS supervisor call the parent back, in lieu of the supervisor calling the parent, can the caseworker texts the parent on a different number, when the parent requested the supervisor call the parent back on a home phone number?;

z.  Are the District Attorney's, required to know what is required to request the court via a Petition or Motion to obtain an Ex parte order to investigate child abuse or neglect?;

aa.  Are Family Court Judges required to know the requirements to order an Ex Parte Order?;

29.  Individual Defendants did not observe any cause for concern, or evidence of abuse or neglect, nor any danger at any point during the interview of the three children.

30.    CPS did not notify that a second interview had been conducted with the four oldest children in January 2019, when CPS pulled them out of their classes at school.

## VIII. ACTION AGAINST CITY OF GARLAND
## UNDER 42 U.S.C. § 1983

31.    Ms. Bucklew and Mr. Ing adopt by reference the facts and allegations set forth above as though fully set forth herein.

32.    The violations of Ms. Bucklew and Mr. Ing's constitutional rights under the Fourth Amendment to the US Constitution, Ms. Bucklew and Mr. Ing's damages, and/or the conduct of the individual defendants were directly and proximately caused by the actions and inactions of Defendant City of Garland, which has encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies, procedures, and practices and customs and to the need for more or different raining, supervision, investigation or discipline in the areas of:

    a.  Legal cause to call CPS to make a report of allegation of abuse or neglect of the minor children of anyone, especially of someone who has invited the police officers into their home, who has been invited guests multiple times to the parent(s) house and around the child(ren) and at no point did the officer witness any concern of either abuse or neglect by the parent(s), and in fact, exactly the opposite;

    b.  Legal cause for a police officer to lie to CPS about an evaluation of a parent by a state evaluator in order to prolong an evaluation or make the parent look more unfit or more unstable, especially one that the police officer, or multiple police officers were a witness to and evaluations that the police body cams also recorded;

    c.  Can a police officer lie to CPS about the parent, at any point, ever;

## XI. LACK OF QUALIFIED IMMUNITY

35.   Ms. Bucklew and Mr. Ing adopt by reference the facts and allegations set forth above as though fully set forth herein.

36.   Individual Defendants are not entitled to qualified immunity as a result of their failure to comply with the statutory requirements of CPS Handbook as of March 2018.

37.   Individual Defendants did not receive a valid report of abuse or neglect according to the Chapter 251 of the Texas Family Code sufficient to open the CPS investigation into the children's circumstances for the case opened on April 16, 2018.

38.   Individual Defendants did not observe any cause for concern, or evidence of abuse or neglect, nor any danger at any point during the time they were around the children, or during any of the the interviews with any of the children.

39.   A new case, with a new allegation was opened on or around December 1, 2018, allegations of medical neglect were reported by a hospital administrative staff after mother called the hospital requesting they change out the $300 prescription they had prescribed the four year old for his ear drops.

40.   On December 1, 2018, the CPS caseworker, Megan Hassinger assigned to the December 2018 case, came to the Plaintiff's house to conduct the investigation.

41.   Upon entering the house and being greeted by all five children, the caseworker was provided the medication prescribed by the emergency room physician, thereby making this December 2018, report of abuse or neglect, unfounded right then and there on the spot.

42.   Individual Defendants and Child Protective Services did not receive a valid report of abuse or neglect according to the Chapter 251 of the Texas Family Code, in order to open the original investigation, that was closed out as "unable to determine".

## IX. DAMAGES AND ATTORNEY'S FEE'S

43.     Ms. Bucklew and Mr. Ing adopt by reference the facts and allegations set forth above as though fully set forth herein.

44.     As a direct and proximate result of Defendant's unlawful actions, Ms. Bucklew and Mr. Ing suffered deprivations of their constitutional rights guaranteed by the forth amendments to the U.S. Constitution.

45.     As a direct and proximate result of the conduct of all defendants, Ms. Bucklew and Mr. Ing suffered damages, some of which may be permanent, including loss of liberty, emotional distress and trauma, loss of enjoyment of life, financial losses and physical symptoms of anxiety and depression such as headaches, difficulty sleeping and nightmares, loss of reputation (affecting school functions of their children and employment) shame, embarrassment, humiliation, mental anguish, pain and suffering, and other such compensatory and tangible consequential damages as the law entitles Ms. Bucklew and Mr. Ing, the Plaintiff's, to recover.

46.     Ms. Bucklew and Mr. Ing seek punitive damages against Defendants, Erica Zamora, her supervisor, Shillonda Perkins, Nicole Rogers, Loretta Bolden, Craig Bonham and Officer Matt St Clair for their intentional, willful and wanton acts completely ignoring and violating "clearly established statutory and constitutional rights of which a reasonable CPS caseworker, supervisor, Family Law, Juvenile Assistant District Attorney and a police officer would have known."

47.     Ms. Bucklew and Mr. Ing hereby requests immediate injunctive relief and sues for these damages and, and prays for just and fair recovery thereof.

## X. DEMAND FOR JURY TRIAL

48.     Ms. Bucklew and Mr. Ing demand a trial by jury.

## XI. PRAYER FOR RELIEF

49.     For the foregoing reasons, Ms. Bucklew and Mr. Ing respectfully request judgment for

the following and ask the Court to:

    i.    Issue a restraining order against CPS from the family for a period that the

        court deems fit, or for at least two years, or even permanently;

    ii.    Award compensatory damages as described above in paragraph IX against

        all Defendants, jointly and severally, in an amount to be determined at

        trial.

    iii.    Alternatively awards nominal damages for violations of Ms. Bucklew and

        Mr. Ing's civil rights;

    iv.    Award punitive damages against the Individual Defendants (not against

        the City of Garland or Texas Department of family and Protective

        Services);

    v.    Award costs, expenses, and attorney's fees pursuant to 42 U.S.C. §

        1988(b); and

    vi.    Enter such other relief as this honorable Court may deem just and

        deserving.

DATED this __13__ day of February 2019.

Respectfully submitted,

*Sarah Bucklew*

Sarah Bucklew, Pro-se
Plaintiff
6221 Aspen Estates Drive
Sachse, TX 75048
(972) 639-1729
sbucklew19@protonmail.com

**"Exhibit A"**

No. DF14-22298-R

| IN THE INTEREST OF | IN THE DISTRICT COURT |
|---|---|
| CHRISTIAN ING | OF |
| CHILD/REN | DALLAS COUNTY, TEXAS |

## EX PARTE ORDER FOR AN INVESTIGATION OF
## CHILD ABUSE OR NEGLECT

On the _18_ day of _May_, 20 _18_ a Petition for Investigation of Child Abuse or Neglect

requesting an Investigative Order pursuant to Section 261.303 of the Texas Family Code was presented

to the Court in the above entitled and numbered cause.

The Court finds that a report of child abuse and/or neglect has been received by Dallas County

Child Protective Services Unit of the Texas Department of Family and Protective Services concerning

the subject child and that an investigation into the circumstances of the child is necessary for the

protection of said child.

IT IS, THEREFORE, ORDERED AND DECREED by the Court that the Dallas County Child

Protective Services Unit of the Texas Department of Family and Protective Services conduct a complete

investigation pursuant to Chapter 261 of the Texas Family Code of the circumstances of the child,

Christian Sky Ing, born 06/11/2013 including, but not limited to interviewing each child, the mother, the

father, and any other persons determined to have knowledge of the circumstances, at the home, the

school, or any other place where the subject child may be or may have been.

IT IS FURTHER ORDERED that each parent, the mother and father of each child named in this

Order for Investigation, and each person responsible for the care of the subject child, and each person

in charge of any place where the subject child may be, are ORDERED TO ALLOW ENTRANCE, by the

Dallas County Child Protective Services Caseworker and Investigator, into the subject child or children's

home, school, or any location where the child or children may be found, for an Interview, Physical Exam,

Medical Exam, and Investigation of child abuse or neglect concerning each child named above who is

a child the subject of this suit, and each parent and each person in charge of any place where the subject

child(ren) may be found is ORDERED to allow the full investigation required by Chapter 261 of the Texas

Family Code to be conducted.

SIGNED THIS THE _18_ DAY OF _May_, 20_18_.

ASSOC.

Judge of the District Court
of Dallas County, Texas

FILED
DALLAS COUNTY
5/10/2018 2:23 PM
FELICIA PITRE
DISTRICT CLERK

..sit For Costs Not Complied With

2 CIT/NOT/PCT 2

No. DF14-22298-R

Crystal McDowell

| | |
|---|---|
| IN THE INTEREST OF | IN THE DISTRICT COURT |
| CHRISTIAN ING | OF |
| CHILD(REN) | DALLAS COUNTY, TEXAS |

## <u>PETITION FOR INVESTIGATION OF CHILD ABUSE OR NEGLECT</u>

This suit is brought by the Dallas County Child Protective Services Unit of the Texas Department

of Family and Protective Services, which petitions the Court to order an Investigation of Child Abuse or

Neglect pursuant to Section 261.303 of the Texas Family Code, and would show the Court as follows:

I.

The following child is the subject of this request for an Investigative Order:

NAME: **Christian Sky Ing**
SEX: Male
DATE OF BIRTH: 06/11/2013
PLACE OF BIRTH: Dallas County, Texas

II.

The mother of the subject child is Sarah Marie Bucklew born 06/26/1982, whose address is **6221 Aspen Estates Dr., Sachse, Texas 75048.**

Process should be served at the above address.

The legal father of the subject child is Christopher James Ing, born 06/11/2013, whose address 6221 Aspen Estates Dr., Sachse, Texas 75048.

Process should be served at the above address.

III.

The subject child is located at 6221 Aspen Estates Dr., Sachse, Texas 75048 and is under the care of the following individuals or institutions, to wit: Sarah Marie Bucklew at 6221 Aspen Estates Dr., Sachse, Texas 75048.

IV.

Petitioner alleges that an oral and/or written report of child abuse or neglect has been received by the Dallas County Child Protective Services Unit of the Texas Department of Family and Protective Services and that an investigation into circumstances of the child is necessary for the protection of the child.

Petitioner alleges that the mental condition and/or emotional health of each parent is in controversy, and Petitioner requests the Court Order each Respondent and parent to submit to a

PETITION FOR INVESTIGATION - PAGE 1

complete mental and/or psychological examination pursuant to Rule 167a T.R.C.P. and to Order each Respondent and parent to participate in counseling and other appropriate services.

WHEREFORE, PREMISES CONSIDERED, Petitioner prays that the Court order an investigation of child abuse or neglect pursuant to Chapter 261 of the Texas Family Code, pertaining to the above listed subject child, said investigation to be conducted pursuant to Chapter 261 of the Texas Family Code; and further for the Court to order the parents and person in charge of any location where the child may be, to allow caseworkers and/or investigators of the Dallas County Child Protective Services Unit of the Texas Department of Family and Protective Services to enter on said premises to conduct the interviews, examinations and investigation as required by Section 261.303 Texas Family Code.

Assistant District Attorney
Attorney for Petitioner (TDPRS)
2600 Lone Star Dr., LB 22
Dallas, Texas 75212
Phone: (214) 698-2285
Fax: (214) 698-5551
craig.bonham@dallascounty.org
T.B.C.#: 02598215

## CERTIFICATION

I do hereby certify that to the best of my knowledge none of the parties against whom relief is sought are represented by an attorney in the matter which is the basis of this Lawsuit in which an Ex Parte Hearing is requested.

Assistant District Attorney

SWORN TO AND SUBSCRIBED TO BEFORE ME THIS 10th DAY OF MAY, 2018.

(SEAL)

ALMA AMY SOSA
Notary Public
STATE OF TEXAS
My Comm. Exp. August 18, 2019

ALMA AMY SOSA
NOTARY PUBLIC IN AND FOR THE
STATE OF TEXAS

NO. DF14-22298-R

TO THE CLERK:

PLEASE ISSUE CITATION TO ANSWER MONDAY NEXT AFTER 20 DAYS and NOTICE OF HEARING by personal service and certified mail FOR SERVICE UPON:

Sarah Marie Bucklew at 6221 Aspen Estates Dr., Sachse, Texas 75048
  (pct. 2)

Christopher James Ing at 6221 Aspen Estates Dr., Sachse, Texas 75048
  (pct. 2)

**"Exhibit B"**



MHS SERVICE AREA

BUCKLEW,SARAH
MRN: MHD2988183
DOB: 6/26/1982, Sex: F
Adm: 5/1/2018, D/C: 5/2/2018

Now comes OFCR M. ST. CLAIR #5940 ____, a peace officer with (name of agency)

GARLAND POLICE DEPARTMENT ____, of the State of Texas, and states as follows:

1. I have reason to believe and do believe that (name of person to be detained)
SARAH MARIE BUCKLEW ____ evidences mental illness.

2. I have reason to believe and do believe that the above-named person evidences a substantial risk of serious harm to himself/herself or others based upon the following:

OVER THE PAST 3 WEEKS SUBJECT HAS CONTINUED TO HAVE PARANOIA THOUGHTS THAT THE SACRISE + GARLAND POLICE HAVING BEEN HACKING HER ELECTRONIC DEVICES. SUBJECT HAS MADE STATEMENTS THAT THESE BELIEFS HAVE IMPAIRED HER ABILITY TO MAINTAIN HER JOB CARE FOR HER KIDS, AND STATEMENTS THAT SHE CAN'T DO THIS ANYMORE

3. I have reason to believe and do believe that the above risk of harm is imminent unless the above-named person is immediately restrained.

4. My beliefs are based upon the following recent behavior, overt acts, attempts, statements, or threats observed by me or reliably reported to me:

SUBJECTS MENTAL HEALTH HAS CONTINUED TO DETERIORATE TO WHERE SHE BELIEVES THAT THE GARLAND POLICE CONTINUE TO "HACK HER PHONES" AND EVEN THREATENED TO GO TO THE CITY MANAGER OF GARLAND'S HOUSE. SUBJECT LEFT VOICEMAILS ON CITY OFFICIALS PHONES AND POLICE OFFICERS PHONE TRYING AND STATING HOW

5. The names, addresses, and relationship to the above-named person of those persons who reported or observed THESE BELIEFS HAVE recent behavior, acts, attempts, statements, or threats of the above-named person are (if applicable): KEPT HER KIDS FROM CHRIST,

CHIEF M. YATES LT. B STCLAIR OFCR M. ST. CLAIR ____

For the above reasons, I present this notification to seek temporary admission to the (name of facility)

METHODIST RICHARDSON ____ inpatient mental health facility or hospital facility or hospital for the detention

of: (name of person to be detained) SARAH MARIE BUCKLEW ____ on an emergency basis.

6. Was the person restrained in any way? ☒ Yes ☐ No
BADGE NO: 5940

PEACE OFFICERS SIGNATURE: _____

Address: 1891 FOREST LN. GARLAND, TX. Zip Code 75042

Telephone (972) 205 - 2030


HEALTH SYSTEM
Form # 12/13

Bucklew,Sarah
MRN: MHD2988183/Acct: 1060115071
6/26/1982 35 y.o./F CSN: 121357886
5/1/2018

NOTIFICATION OF EMERGENCY DETENTION

MHS SERVICE AREA

BUCKLEW,SARAH
MRN: MHD2988183
DOB: 6/26/1982, Sex: F
Adm: 5/1/2018, D/C: 5/2/2018
Printed by AVRAHAM, AVIAD at 8/9/18  9:45 AM

Page 9

**"Exhibit C"**

CAUSE NO: _____

| | | |
|---|---|---|
| TEXAS DEPARTMENT | § | IN THE DISTRICT COURT OF |
| OF FAMILY & PROTECTIVE | § | |
| SERVICES | § | \_\_\_\_\_COUNTY,   TEXAS |
| | § | |
| V. | § | \_\_\_\_\_ JUDICIAL DISTRICT |

_____

## AFFIDAVIT IN SUPPORT OF ORDER IN AID OF INVESTIGATION (*IF APPLICABLE* AND REQUEST FOR RESTRAINING ORDER)

**STATE OF TEXAS**

**COUNTY OF _____**

Before me, the undersigned authority, personally appeared _____, who was sworn by me and deposed as follows:

My name is _____.  I am over the age of 18, of sound mind and capable of making this affidavit.  I am an authorized representative of the Texas Department of Family and Protective Services, and the facts and allegations stated in this affidavit are within my personal knowledge and are true and correct.

 The following facts show the necessity for an order in aid of investigation:

### 1. CHILD(REN)

**Name**:
**DOB:**
*If a child's date of birth is not available, provide an estimated age but indicate the age is an estimate.*

**Current address**:

**Any other address during past 6 months:**

*Repeat as needed for each child.*

### 2. PARENTS/ MEMBERS OF HOUSEHOLD

<u>**Mother**</u>
**Name:**
**DOB:**
**Current address:**

**Father**
**Name**:
(*indicate which children he is father of if not all of the above*)
**DOB:**
**Current Address**:

*Add additional parents as needed.*

**Other Household Member**
**Name**:
**Relationship to child/parent** _____
**DOB:**
**Current Address**:

*Add additional non-parent members of the household as needed.*

***Relationship -*** *indicate how the person is connected to the household (by marriage, relative, stepparent, friend or other) and which parent or child this relationship is with (i.e. married to Susan Giles (mother) or stepfather to Thomas Giles (child).*

## 3. INDIAN CHILD STATUS
**Mother** _
__Denies tribal connection
__ Unavailable/unable to answer.
__Describes s  tribal connection as follows:_____
**Father**
__Denies tribal connection
__Unavailable/unable to answer.
__Describes tribal connection as follows: _____

**Child** _____
__Denies tribal connection
__Unavailable/unable to answer.
__Describes tribal connection as follows: _____

_____**(Extended family/other))**
__Denies tribal connection
__Unavailable/unable to answer.
__Describes tribal connection as follows: _____

4

### 4. ALLEGATIONS

***What was reported?*** *Describe the specific facts reported regarding abuse or neglect of one or more children.*

***What kind of reporter made the report?***

    *Anonymous or named?*

    *Professional or member of public?*

    *Did reporter have 1ˢᵗ hand information (i.e. did reporter tell CPS something they saw or heard?) or did the reporter repeat what someone else said?*

***DO NOT*** *give the name of the reporter, or refer to any witness as the reporter.   The reporter is always entitled to remain confidential.*

*For more information, See Practice Guide, SECTION 11, TOOLS, Affidavits, Bolstering Child Abuse and Neglect Allegations Without Revealing Reporters.*

### 5. THE INVESTIGATION

***What steps in the investigation have been completed?*** *If your investigation has been interfered with before you could make much progress, you won't be able to answer most of these questions. That's not a problem.  If you have already completed some part of the investigation, however, that is extremely helpful evidence and should be included in this affidavit.*

***Who have you interviewed (again, NOT identifying the reporter)?*** *What information relevant to the allegations did you obtain?*

***What other evidence is relevant to the allegations?*** *Describe any medical records, bruises, conditions in home observed, police reports, photographs or other evidence that will show the court why CPS believes child safety requires further investigation.*

***Is there a pattern of evidence that supports the allegation of abuse or neglect?*** *By summarizing facts that may be scattered in the narrative, you can often best demonstrate the importance of the information. For example, a father's single DUI conviction may not be important by itself, but if coupled with the fact that he was released from jail after a conviction for assault less than three months ago, that he denies that anyone who only drinks beer has a drinking problem and that he tried to choke his wife when she suggested he enter a detox program, these facts together paint a vivid picture of someone with alcohol and anger management problems.  By pulling related facts together, the caseworker can make it easier for the court to see the overall pattern the evidence may show.*

***Is there information that conflicts with the allegations?*** *For example, the alleged perpetrator states that the child got hurt when she fell off the couch. Most investigations will reveal some conflicting information.  Simply explain why, despite some conflicting information, there is good cause to investigate further.*

5

## 6. CPS HISTORY

*Always include date of referral, allegation, findings & brief explanation of relevant CPS history.*

*For example:  On July 3, 2008, the department received a referral alleging neglectful supervision of 3 year old Stephen Jones by his mother, Mary Smith.   Ms. Smith was arrested for DUI and Stephen was found alone and crying in the house six hours after Ms. Smith reported leaving the home.  Neglectful Supervision was validated, and the case was opened in Family Based Services.*

## 7. CRIMINAL HISTORY
*Only relevant crimes with convictions can be used as evidence.  If the local   court requires that all arrest history be listed, even if the charges were dismissed, for example, that information can be included but should not be relied on to demonstrate why an Order in Aid of Investigation is necessary.*

## 8. INTERFERENCE WITH  INVESTIGATION
***What's missing?***  *The court needs to know what part of the DFPS investigation has not been completed because of interference or other circumstances.   List as many of the following that apply, being careful not to select contradictory assertions, and to add required details where indicated.*

- *DFPS was denied access to the child's home, school, or other location where the child is located.   [SPECIFY THE LOCATION, WHO DENIED ACCESS AND WHEN THIS OCCURRED].*

- *DFPS was denied consent to transport a child to [SPECIFY DESTINATION] for purposes related to an interview or other purpose related to the investigation by [SPECIFY WHO DENIED CONSENT AND WHEN].*

- *DFPS was denied access to this child's medical, psychological or psychiatric records by [ SPECIFY WHO AND WHEN].*

- *DFPS was denied the opportunity to obtain a [SELECT ALL THAT APPLY] medical, psychological or psychiatric] examination of the child by [SPECIFY WHO DENIED CONSENT AND WHEN].*

- *DFPS did not request consent to [ENTER, TRANSPORT, OBTAIN EXAM OR OTHER] because [DETAIL CIRCUMSTANCES, e.g. flight risk or other factor that indicates risk to child may increase if family has advanced warning of DFPS intervention].*

*Summarize why the missing information is necessary to the investigation of abuse and neglect and essential to child protection, essentially why there is good cause for the*

6

*court to issue the order. In some cases, it may seem obvious but a sentence or two describing the crux of the problem is always useful to a busy judge who is reading many documents every day.*

**9. FLIGHT RISK** [*DELETE UNLESS RESTRAINING ORDER IS REQUESTED*]

***There is probable cause to conduct the investigation.*** *If you have demonstrated good cause for an order in aid of investigation (above), the same facts almost certainly will demonstrate probable cause for the investigation.*

***A restraining order prohibiting removing the child from the state or from a geographic area identified by the court is necessary. If you are concerned that a parent or caretaker may flee the state or a specific geographic area with the child, what facts demonstrate that this a risk?*** *Relevant information would include any past history of a parent fleeing; any threat the parent/caretaker has made to abscond with the child; evidence of preparations to leave (purchase of tickets, securing passports, and the like); or proof of an established residence abroad or out of state.*

**10. CONCLUSION:**

Based on the foregoing facts, I believe there is good cause to issue an order to aid in this investigation and request that the court order that DFPS and its authorized representatives be granted specific authority to:

***What needs to be ordered?*** *Remember to add required details where indicated.*

- *Enter the [home, school, OTHER SPECIFIC LOCATION] of [CHILD(REN)'S NAME(S)] in order to: [SELECT ONE OR MORE OPTIONS BELOW, AS APPLICABLE];*
    - *[INTERVIEW AND/OR EXAMINE] this child; and/or*
    - *Observe the child's home (or other location where the alleged abuse or neglect occurred, if applicable) and immediate surroundings for evidence of abuse or neglect.*

- *Obtain any and all medical, psychological, or psychiatric records relating to [CHILD(REN)'S NAME(S) AND DATE(S) OF BIRTH];*

- *Obtain [DESCRIPTION OF OTHER NON-MEDICAL RECORDS THAT ARE NEEDED TO LOCATE THE FAMILY OR OTHERWISE AID IN THE INVESTIGATION];*

- *Transport [CHILD(REN)'S NAME(S)] to a [Children's Advocacy Center, medical doctor; psychologist, psychiatrist or other medical specialist, or other specific location] for an [INTERVIEW AND/OR EXAMINATION];*

[***DELETE UNLESS RESTRAINING ORDER IS REQUESTED***] Based on the foregoing facts, I believe there is reason to believe that a person responsible for the child's care, custody or welfare may remove the child from the state [or a specific

designated geographic area] before the investigation is completed, that there is probable cause to conduct the investigation, and that a restraining order prohibiting [INSERT NAME OF PARENT/CARETAKER FLIGHT RISK] from removing the child from the state [or a specific designated geographic area] is necessary for the safety and welfare of the child. On that basis the Department requests that this Court issue:

A restraining order prohibiting [INSERT NAME OF PARENT/CARETAKER FLIGHT RISK] from removing the child from the state [or a specific designated geographic area] is necessary for the safety and welfare of the child.

Caseworker's signature
Name & title

Affiant
SWORN TO AND SUBSCRIBED before me, the undersigned Notary Public on this the
____ day of _____ 2016.

_____
NOTARY PUBLIC in and for the
STATE OF TEXAS
Commission Expires:

District Clerk,

Please find the enclosed complaint, Plaintiff's Original Complaint for Injuntive Relief and Monetary Damages and the enclosed Civil Cover Sheet and file this new case.

Thank you.

Sincerely,
Scarlet Buckleu
Plaintiff (Pro-se)
6221 Aspen Estates Drive
Sachse, TX 75048
(972) 639-1729
(214) 714-1996
sbucklew19@protonmail.com

JS 44 (Rev. 06/17) - TXND (Rev. 06/17)

**CIVIL COVER SHEET**

RECEIVED
FEB 2 0 2019
CLERK U.S. DISTRICT COURT
NORTHE[RN] DISTRICT OF TEXAS

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

**(b)** County of Residence of First Listed Plaintiff    Dallas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*    (ProDSe)

**DEFENDANTS** Craig Bortham, Erica [ ] Shillonda Perkins, Nicole Rogers, Loretta Bolden officer matt st clair, City of Garland + Texas Department of Family Protective Service

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question *(U.S. Government Not a Party)*
☐ 2  U.S. Government Defendant
☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
P opened CPS without an allegation of abuse or neglect ever made + obtained exparte order without probable cause
Brief description of cause:
42 USC 1983

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**    *(See instructions:)*
JUDGE    David C Godbey
DOCKET NUMBER    3:18-cv-02117

DATE    February 13, 2019
SIGNATURE OF ATTORNEY OF RECORD    Sarah Budke (Pro-se)

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

Sarah Buckles
6201 Aspen Estates Drive
Sachse, TX 75048



RECEIVED-1
FEB 20 2019
MAILROOM

US District Court
1100 Commerce Street
Room 1452
Dallas, TX 75242



