**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SARAH BUCKLEW and** | § | |
| **CHRISTOPHER ING,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:19-CV-435-N-BH** |
| | § | |
| **CRAIG BONHAM, et al.,** | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge**[1] |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

Before the Court are the plaintiffs' *Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form)*, filed March 11, 2019 (docs. 5, 6). Based on the relevant filings and applicable law, the applications should be **DENIED**, and the plaintiffs' case should be **DISMISSED**.

### I. BACKGROUND[2]

On February 20, 2019, Sarah Marie Bucklew and Christopher Ing (Plaintiffs) filed this civil rights action under 42 U.S.C. §§ 1983 and 1988 against various defendants for allegedly violating their Fourth Amendment rights. (doc. 3.) Their amended complaint alleges that between June 2017 and February 2019, the defendants falsely and maliciously accused them of abusing and neglecting their minor children, which resulted in them being subjected to four separate investigations by Child Protective Services. (doc. 7 at 2.) They seek injunctive and monetary relief. (*Id.*)

**A.    <u>Applications to Proceed *In Forma Pauperis*</u>**

On March 11, 2019, Plaintiffs applied for leave to proceed *in forma pauperis* (IFP). (*See*

---

[1]By *Special Order No. 3-251*, this *pro se* case has been referred for full case management.

[2]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

docs. 5, 6.)  They signed separate IFP applications, declaring under penalty of perjury that the information in their respective IFP application was true and that they understood that "a false statement may result in a dismissal" of their claims. (docs. 5 at 1; 6 at 1.)

Bucklew's IFP application, dated March 9, 2019, reported that her average monthly income amount during the prior twelve months was $0; her last employer from January 2013 to June 2017 was "sarahbucklew.com" at a gross monthly pay of $12,000. (doc. 5 at 1-2.)  The application explained that Bucklew was self-employed as a web developer, and the "underlying basis of [her] federal lawsuits" was the reason she was unable to work.  (*Id.* at 6.)  It estimated that she was paying $1,275 a month for family expenses, including $600 for utilities, $200 for food, $200 for medical and dental expenses, and $275 for alimony.  (*Id.* at 4-5.)  Her paid monthly expenses did not include payments for insurance, taxes, credit card or other installment debts, rent or home-mortgage, or other unspecified expenses, and it did not list any expenses separately paid by her "spouse." (*Id.*)  The application stated that Bucklew and her spouse had no assets. (*Id.* at 3.)

Ing's IFP application, dated March 4, 2019, reported that he had been employed by Build My Scores since October 2017, and his average monthly income amount during the prior twelve months was $1,000.  (doc. 6 at 1-2.)  Attached to his application is a Statement of Earnings from Build My Scores, dated March 6, 2019, which reported that his earned year-to-date salary was $2,100.  (doc. 6-1.)  The application estimated that he was paying $1,385[3] a month for family expenses, including $600 for utilities, $200 for food, $50 for transportation, $75 for car insurance, $150 for car installment payments, and $310 for alimony. (doc. 6 at 4-5.)  His paid monthly expenses did not include payments for rent or home-mortgage, taxes, health and dental expenses,

_____

[3]The total monthly expenses stated in the application was $1,075. (*See* doc. 6 at 5.)

or other unspecified expenses, and it did not list any expenses separately paid by his "spouse." (*Id.*) The application stated that Ing had a checking account containing $5.70, and that he and his spouse had no assets. (*Id.* at 3.)

**B.    Bucklew's Other Civil Rights Action**

At the time that Plaintiffs filed their lawsuit and IFP applications, Bucklew had a separate civil rights lawsuit pending in this district. *See Sarah Bucklew v. Officer Matt St. Clair, et al.*, No. 3:18-CV-2117-N (BH) (St. Clair Case). The lawsuit, filed August 14, 2018, alleged that the named defendants were responsible for having her involuntarily admitted to a psychiatric hospital on May 1, 2018, and that they had violated her Fourth Amendment rights. (*See* St. Clair Case, doc. 1 at 2, 7-12.) Bucklew sought leave to proceed IFP on August 14, 2018, which was granted the following day. (*Id.*, docs. 2, 6.)  Her IFP application listed a home valued at $407,000 as her only asset, and estimated that she was paying $2,250 a month for family expenses, including rent/mortgage payments, utilities, maintenance, food, clothing, laundry, medical and dental expenses, and transportation. (*Id.*, doc. 2 at 3-5.) Like her IFP application in this case, there were no monthly expense payments for insurance, taxes, credit card or other installment debts, or other unspecified expenses listed, and it did not identify any expenses separately paid by her spouse. (*Id.* at 4-5.)

On September 10, 2018, the defendants moved to dismiss the entire case on the ground that Bucklew had submitted a false affidavit of poverty. (*Id.*, doc. 14 at 2.)  As evidence, they provided various statements signed by her under penalty of perjury and filed in her Chapter 13 bankruptcy case in this district.[4]  (*Id.* at 8-46.)  Even though the statements were filed one day after she signed her IFP application in the St. Clair Case, there were significant inconsistencies, including, among

---

[4]*See In re Sarah Bucklew*, Cause No. 3:2014bk32143 (Bankr. N.D. Tex. Jun. 1, 2018).

3

other things, that she had a checking account with $1,000, she was employed with a current monthly income of $11,183.33, and her current monthly expenses were $6,010.00. (*Id.* at 45.)[5]

The defendants also provided a Confidential Affidavit of Financial Condition, dated July 16, 2018, which Bucklew filed in a state criminal case against her. (*Id.*, doc. 28 at 13.)[6]  In it, she swore that she did not have a salary but was receiving $1,200 a month from "spouse's salary/other household income;" she had monthly expenses of $4,040, including $900 for car payments and insurance and $500 for child support; her assets included a vehicle valued at $5,000; and she did not have real property or any bank accounts. (*Id.*)

The defendants also provided a mechanic's lien against Bucklew's home that "All Season" recorded in the property records on December 4, 2018; it had been sworn to and signed by its owner, "Chris Ing." (*Id.* at 14-15).  It stated that on August 20, 2018, Bucklew agreed to pay Ing $27,400 for repair work to her home, and that he had received a down payment of $3,800. (*Id.*) It also stated that the repairs were completed on August 29, 2018, but Bucklew had not paid the remaining balance of $24,200. (*Id.*)

On May 15, 2019, it was recommended that Bucklew's St. Clair case be dismissed with prejudice under § 1915(e)(2)(A) because the evidence demonstrated that her IFP application contained false information and established the existence of "bad faith, manipulative tactics, or litigiousness." (*Id.*, doc. 44.)  The recommendation was adopted, and Bucklew's lawsuit was

---

[5]The bankruptcy case was ultimately dismissed with prejudice on September 10, 2018, after Bucklew failed to timely make the first payment under the bankruptcy plan.  *See In re Sarah Bucklew*, Cause No. 3:2014bk32143 (doc. 41).  Her other two prior Chapter 13 bankruptcies were also dismissed because she failed to timely pay under the plan. *See In re: Sarah Marie Bucklew*; Cause No. 3:2014bk32143, 3:2014bk32143 (Bankr. N.D. Tex. 2014); *In re: Sarah Marie Bucklew*; Cause No. 3:2015bk33973 (Bankr. N.D. Tex. 2015).

[6]*See State v. Sarah Marie Bucklew*, M1804091K, Dallas County Criminal Court No. 9 (June 28, 2018).

4

dismissed with prejudice under § 1915(e)(2)(A) on May 24, 2019. (*Id.*, docs. 55, 56); *see also Bucklew v. St. Clair*, No. 3:18-CV-2117-N (BH), 2019 WL 2250886, at *5 (N.D. Tex. May 15, 2019), *adopted by* 2019 WL 2249718 (N.D. Tex. May 24, 2019).

**C.    Plaintiffs' Answers to Magistrate Judge's Questionnaires**

On November 26, 2019, Plaintiffs were ordered to provide additional financial information and to fully answer the questions in a Magistrate Judge's Questionnaires (MJQ). (*See* docs. 15, 16.) The MJQs identified the responses in each IFP application that were not completed, or were inconsistent with the evidence of record in the St. Clair Case and the other cases involving Bucklew. (*Id.*) On November 28, 2019, Plaintiffs filed their answers. (*See* docs. 18, 19.) They explained that they were not married but had been living together for seven years, and that Ing had been paying all the household expenses. (docs. 18 at 2; 19 at 1.) They claimed that they did not have any cash, and that their household is owed money by the defendants they are suing. (docs. 18 at 2; 19 at 2.) When asked to disclose all persons, businesses, or organizations that owed money to Ing, including the amounts they owed, they only responded that an unrelated woman owed him $4,000. (docs. 18 at 3; 19 at 2.)

Ing was asked to provide information about the mechanic's lien he had filed on Bucklew's home, including his sworn statement that Bucklew had paid him $3,800 on August 20, 2018, but he refused to answer the questions, calling them "irrelevant" and "stupid." (doc. 18 at 3.) Bucklew was asked about the vehicle valued at $5,000 that was listed in her July 16, 2018 criminal affidavit, including whether she owed that vehicle at the time of the affidavit, whether she still possessed it, what date she last possessed it, how much money had been received if she had sold it, and the status of those funds. (doc. 19 at 2.) She responded that she did not currently own a vehicle without

answering the remaining questions about the vehicle. (*Id.*)

## II.  28 U.S.C. § 1915

"The federal [IFP] statute, codified at 28 U.S.C. § 1915, allows an indigent litigant to commence a civil or criminal action in federal court without paying the administrative costs of proceeding with the lawsuit." *Denton v. Hernandez*, 504 U.S. 25, 27 (1992).  It was designed to ensure that litigants would not be deprived of meaningful access to the federal judicial system due to their financial circumstances. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).  A litigant seeking IFP status must submit an affidavit identifying all assets she possesses, as well as a statement that she is unable to pay the necessary fees of bringing a federal civil action. *See* 28 U.S.C. § 1915(a)(1).

District courts have the authority and discretion to conduct reasonable investigations into allegations of poverty. *Nottingham v. Warden, Bill Clements Unit*, 837 F.3d 438, 441 (5th Cir. 2016). If the court finds at any time that "the allegation of poverty is untrue," the IFP statute provides that it must dismiss the case, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid." 28 U.S.C. § 1915(e)(2)(A).  Dismissal is mandatory if the court determines that "the contents of an IFP application are false." *Nottingham*, 837 F.3d at 441; *see also Castillo v. Blanco*, 330 F. App'x 463, 466 (5th Cir. 2009) (affirming dismissal under § 1915(e)(2)(A) when the unrebutted evidence demonstrated that the plaintiff's IFP affidavits contained false information).

In the Fifth Circuit, dismissal under the IFP statute is predicated on the submission of false allegations in the affidavit rather than the litigant's actual financial status.  *See Lay v. Justices-Middle District Court*, 811 F.2d 285 (5th Cir. 1987).  In *Lay*, a prisoner submitted an IFP application that accurately represented his financial status, but contained the forged signature of a prison supervisor.  *Id.* at 285.  When the district court discovered the forgery, it exercised its discretion to

6

dismiss the case under the IFP statute.[7] *Id.* at 286. Noting that "in a strict sense, [the prisoner's] allegation of poverty was true," the Fifth Circuit nevertheless held that the IFP statute was "broad enough to permit a district court to dismiss an action for forgery of the signature on the affidavit attesting to such poverty. Such conduct is directly related to the litigant's privilege to proceed at the expense of the government and the district court has the power to ensure that this privilege is properly granted." *Id.* Based on *Lay*, courts in this circuit must dismiss a case based on a finding that the contents of an IFP application are false, even if the litigant would still qualify as a pauper. *See id.*; *see also Nottingham*, 837 F.3d at 441.[8]

## A. False Allegations of Poverty

Here, Plaintiffs provided incomplete or internally inconsistent statements about their financial circumstances in their IFP applications. In their MJQs, Plaintiffs were instructed to identify all persons who currently owed money to Ing, including the amounts owed, but neither plaintiff mentioned the $24,200 that Bucklew purportedly owed him for repair work performed on

---

[7]Prior to its amendment in 1996, the IFP statute provided courts with discretion as to decide whether to dismiss a case if the allegation of poverty was untrue. *Denton*, 504 U.S. at 27 (citing 28 U.S.C. § 1915(d)). The current version of the statute eliminates that discretion. *See* 28 U.S.C. § 1915(e)(2)(A).

[8]Although the statute is couched in "mandatory rather than permissive terms," *Castillo*, 330 F. App'x at 466, there is no clear consensus among courts as to whether dismissal is premised on the falsity of the allegations, or on the falsity of poverty status. Courts in other circuits have held that the IFP statute "does not mandate that the district court dismiss [a plaintiff's] claim if it finds that certain assertions in his affidavit are untrue; instead, it requires the district court to dismiss the claim if it finds that [the plaintiff] is not sufficiently poor to qualify for *in forma pauperis* status given the facts that are true." *Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000); *see, e.g., Vann v. Comm'r of N.Y. City Dep't of Corr.*, 496 F. App'x 113, 115 (2nd Cir. 2012) (emphasizing that the IFP statute serves to weed out litigants who falsely understate their net worth to obtain IFP status, but does not require dismissal for inaccuracies, misstatements, or minor misrepresentations made in good faith (citations omitted)); *Holly v. Wexford Health Servs., Inc.*, 339 F. App'x 633, 636 (7th Cir. 2009) (stating that the district court, even after learning that plaintiff may have made false statements in his IFP petition, still had a responsibility to first determine the truth of plaintiff's allegation of poverty before dismissing his case); *Matthews v. Gaither*, 902 F.2d 877, 881 (11th Cir. 1990) (stating that the purpose of the IFP statute "is not to punish litigants whose affidavits contain insignificant discrepancies, but to weed out the litigants who falsely understate their net worth in order to obtain [IFP] status when they are not entitled to that status based on their true net worth"). In other words, "the trigger for mandatory dismissal is the falsity of the 'allegation' of 'poverty,' not the falsity of any one particular statement on the financial affidavit." *Chriswell v. Big Score Entm't, LLC*, No. 11 C 00861, 2013 WL 3669074, at *4 (N.D. Ill. July 12, 2013).

her home, as reflected in the sworn mechanic's lien he had recorded in the property records. (docs. 18 at 3; 19 at 2.) In addition, Ing explicitly refused to answer any questions about his mechanic's lien, and instead referred to those questions as "irrelevant" and "stupid." (doc. 18 at 3.)  Bucklew also failed to respond to specific questions about the vehicle she had listed in her criminal affidavit. (doc. 19 at 2.)  "Nothing in § 1915 permits an applicant, even one who genuinely is unable to afford to pay the filing fee, to pick and choose what financial information to include on the *in forma pauperis* application." *Staten v. Tekelec*, No. 5:09-CV-434-FL, 2011 WL 2358221, at *2 (E.D.N.C. June 9, 2011).

As in the St. Clair Case, the evidence of record in this case also supports a finding that Plaintiffs' IFP applications contain false information. *See St. Clair*, 2019 WL 2250886, at *3-4.[9] Given the untrue allegations of poverty made by Plaintiffs, their IFP applications should be **DENIED**.  Because false allegations of poverty mandate dismissal under § 1915(e)(2)(A), Plaintiffs' case should also be dismissed.  *See Lay* 811 F.2d at 286; *see also Smith-Garcia v. Harrison Cty.*, 776 F. App'x 226, 227 (5th Cir. 2019) ("[T]he district court did not abuse its discretion in dismissing Smith-Garcia's complaint pursuant to § 1915(e)(2)(A) in light of his failure to disclose the income he received from his prior false arrest lawsuit within the applicable timeframe.").

## B.    Bad Faith, Manipulative Tactics, or Litigiousness

After a court concludes that dismissal is required under § 1915(e)(2)(A), it has the discretion to determine whether the case will be dismissed with or without prejudice.  *Castillo*, 330 F. App'x

---

[9]Judicial notice of the filings in the St. Clair Case and in the other civil and criminal proceedings that Bucklew is party to may be taken, as they are matters of public record.  *See Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) ("A court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings"); *see also Silva v. Stickney*, No. 3:03-CV-2279-D, 2005 WL 2445433, at *7 (N.D. Tex. Sept. 30, 2005) (taking judicial notice of a plaintiff's prior case).

at 466. "Though the statute is silent as to whether this dismissal should be with or without prejudice, . . . cases are appropriately dismissed with prejudice when 'evidence exists of bad faith, manipulative tactics, or litigiousness.'" *Id.* (quoting *Lay*, 811 F.2d at 286 (recognizing that dismissal with prejudice "is an extreme sanction that should only be imposed when evidence exists of bad faith, manipulative tactics, or litigiousness") (citations omitted)).

        *1.    Bucklew*

        Here, the evidence demonstrates that Bucklew is quite familiar with the IFP system in federal district court, bankruptcy court, and state court.[10] *See Justice v. Granville Cty. Bd. of Educ.*, No. 5:10-CV-539-BR, 2012 WL 1801949, at *4 (E.D.N.C. May 17, 2012) ("An individual's familiarity with the IFP system may be considered in determining whether he or she has acted in bad faith."), *aff'd sub nom. Justice ex rel. AJ v. Granville Cty. Bd. of Educ.*, 479 F. App'x 451 (4th Cir. 2012). Bucklew's false statements regarding her financial situation in her IFP application in this case, coupled with past instances of false information of her pauper status in federal court, bankruptcy court, and state court, as detailed in the St. Clair Case, reveal a pattern of attempts to deceive courts about her financial status that is sufficient to justify dismissal with prejudice in this case. (*See* docs. 5, 19); *St. Clair*, 2019 WL 2250886, at *4-5; *see also Castillo*, 330 F. App'x at 466; *see, e.g., Dawson v. Lennon*, 797 F.2d 934, 936 (11th Cir. 1986) ("The clear pattern of attempts to deceive the courts on his financial status in this and other cases justifies the district court's imposition of the severe sanction of dismissal with prejudice."); *Taylor v. Wall*, No. C.A.05-118-T, 2005 WL 1941647, at *3 (D. R.I. July 25, 2005) (finding dismissal with prejudice appropriate where plaintiff

---

        [10]In March and April 2019, Bucklew had removed two state actions against her to this district and moved to proceed IFP in those cases as well. *See The Bank of New York Mellon, as Trustee for CIT Home Equity Loan Trust 2003-1 v. Douglas Couchran, et al.,* No. 3:19-CV-00759-L, doc. 4 (filed Mar. 29, 2019); *State of Texas v. Sarah Marie Bucklew*, No. 3:19-CV-01004-B-BN, doc. 3 (filed April 25, 2019).

engaged in pattern of misrepresenting his financial ability in other cases in the same court and in other courts to avoid payment of court fees); *Igbinadolor v. TiVo, Inc.*, Civ. A. No. 1:08-CV-2580-RWS, 2009 WL 3253946, at *1 (N.D. Ga., Oct. 6, 2009) ("The fact that Plaintiff perpetrated this fraud upon the Court in more than one case warrants the sanction of dismissal with prejudice."). Accordingly, all of Bucklew's claims against the defendants should be dismissed with prejudice. *See Washington v. M. Rodrigue & Son, Inc.*, No. CIV.A. 12-938, 2013 WL 1814918, at *2-3 (E.D. La. Apr. 29, 2013) (finding the plaintiff's "false and misleading information in his Pauper Affidavit," were "sufficiently egregious to warrant the mandatory dismissal of his case with prejudice, as a penalty for defrauding the Court and as a deterrent of future conduct").

### 2.    Ing

Ing does not appear to have the same level of litigation experience as Bucklew. *See Justice*, 2012 WL 1801949, at *4. His IFP application generally mirrored hers, however, and he filed it in conjunction with hers and refused to respond to questions about a mechanic's lien that he filed against her home, in which he lived with her. (*See* docs. 6, 18.) There is sufficient evidence in the record to support a finding that Ing made bad faith misrepresentations about his financial circumstances. *See Lay*, 811 F.2d at 286; *see also Bell v. Dobbs Int'l Serv.*, 6 F. Supp. 2d 863, 865 (E.D. Mo. 1998) (finding bad faith based on "the materiality of the omissions and misrepresentations, the lack of a credible 'innocent' explanation therefor, and plaintiff's apparent total disregard for the truth, completeness, and accuracy of the affidavit"). Accordingly, all of his claims against the defendants should also be dismissed with prejudice.

### III.    RECOMMENDATION

Plaintiffs' amended complaint should be **DISMISSED with prejudice** under §

1915(e)(2)(A).

  **SO RECOMMENDED** on this 9th day of February, 2022.

<br>

                IRMA CARRILLO RAMIREZ
                UNITED STATES MAGISTRATE JUDGE

<br>

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

  A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

<br>

                IRMA CARRILLO RAMIREZ
                UNITED STATES MAGISTRATE JUDGE